Clarence W. MOODY, Respondent,

v.

MISSOURI–KANSAS–TEXAS RAILROAD COMPANY, a Corporation, Appellant.

No. 45364.

Supreme Court of Missouri.

Division No. 1.

Dec. 10, 1956.

---

Carl S. Hoffman, St. Louis, A. E. Elliott, Nevada, for appellant.

Arthur C. Popham, Sam Mandell, Kansas City; Everett E. Teel, Nevada, Sylvan Bruner, Pittsburg, Kan., for respondent, Popham, Thompson, Popham, Mandell & Trusty, Kansas City, of counsel.

WESTHUES, Judge.

Plaintiff Clarence W. Moody filed suit in the Circuit Court of Vernon County, Missouri, against defendant Missouri-Kansas-Texas Railroad Company, a corporation, to recover damages for the wrongful death of his wife Nora Marie Moody and for damages to a tractor. Plaintiff charged that one of defendant's trains struck a tractor, which Nora Marie was driving, at a crossing on plaintiff's farm causing the death of Nora Marie and the destruction of the tractor. A trial resulted in a jury verdict for plaintiff. Damages were fixed at $15,000 for death of plaintiff's wife and $1,950 for damage to the tractor. From the judgment entered, defendant appealed.

The case was submitted to a jury under the humanitarian doctrine on two charges of negligence, failure to warn and failure to slacken speed. Defendant briefed two points: In the first, defendant says there was no evidence that after deceased was or could have been discovered in a place of imminent peril the speed of the train could have been sufficiently slackened to have avoided the collision. The second point pertains to instruction No. 1. Defendant says that two inconsistent theories were submitted, failure to warn and failure to slacken speed of the train. Defendant further says that the giving of instruction No. 1 was error because "(b) It told the jury to find for plaintiff even though Mrs. Moody failed to look and was negligent in getting into a position of danger, and omitted her failure to listen and to heed the warning of the railroad tracks."

With these assignments of error in mind, we shall state the facts as shown by the evidence. Plaintiff owned a farm of 246 acres located about six miles west of Deerfield, Missouri. The defendant's railroad tracks passed through this farm leaving 46 acres on the south and 200 acres to the north of the tracks. The tracks were enclosed by fences. A crossing maintained by the defendant was used for many years in going from one portion of the farm to the other. On the afternoon of June 24, 1954, at about 2:20 o'clock, the deceased, driving a tractor with a cultivator attached thereto, attempted to cross the tracks and the tractor was struck by a diesel engine drawing a freight train of 16 cars. The train was an "extra." The evidence was undisputed as to the speeds of the train and of the tractor. The train was traveling about 40 miles per hour and its speed was not slackened before the collision. The tractor was moving about 2 miles per hour. The train was going in a southwesterly direction and the crossing could be seen for more than 1,000 feet by the crew of a train approaching from the northeast. The day was clear and dry. It was conceded that no warning was given by the oncoming train. The tractor and the deceased could have been seen by the train crew for more than 1,000 feet.

The evidence of plaintiff was that he was working in a field about 600 feet or so from the crossing; that he saw his wife open the gate on the south side of the tracks, drive the tractor through toward the tracks, stop to close the gate, and then drive the tractor to and upon the crossing; that the train struck the tractor at the rear wheels, the front portion being over the tracks; that his wife was dead when he arrived at the crossing. There was a dispute in the evidence whether the speed of the train could have been slackened sufficiently, after the deceased was in a position of peril, to have avoided the collision. The tractor was 16 feet long, painted yellow; the cultivator was red. Plaintiff said they were bright colors. The distance from the gate to the first rail was 48 feet. Plaintiff testified he saw the tractor moving toward the tracks when it was 15 feet therefrom. A tractor moving at two miles per hour would go about 3 feet per second. The tractor being 16 feet long, it would take about 10 or 11 seconds to reach the point where it was struck by the diesel engine. That being true, the train traveling at 40 m.p.h. must have been more than 600 feet from the crossing. Had the train been delayed 3 or 4 seconds, the collision would not have occurred.

The fireman of the diesel engine testified that he was in the fireman's seat on the left side of the engine looking ahead for track clearance. The tractor was on his side as the train traveled southwesterly. He testified that he gave the engineer an emergency stop signal immediately on discovering the tractor moving toward the tracks; that at that time, the tractor was about 6 or 7 feet from the first rail; that he first saw the tractor when the train was 100 feet from the crossing; that due to the construction of the diesel, there was a blind spot so he could not see the tractor at some points while it was moving toward the tracks. There was evidence to the contrary, that is, that the fireman could have seen the tractor all of the time after it passed through the gate. The fireman, while testifying on cross-examination, made some admissions that were at variance with his evidence that he was unable to see the tractor and the deceased. Note what he said when asked if the defendant was operating a diesel so constructed that the fireman could not see cars approaching a crossing:

"A. Public crossing or private crossing.

"Q. You could see it at a public crossing?

"A. You do a little more looking at a public crossing.

"Q. I see. When you do a little more looking then you see, don't you?

"A. That's right."

At the trial, the engineer testified that the fireman did not give the emergency signal until the train was about 125 feet from the crossing. In a deposition produced at the trial on cross-examination, the engineer had made the statement that it was about 10 seconds before the collision when the fireman gave him the emergency signal. Evidence given by a retired engineer was that the speed of a train, like the one involved traveling at 40 m.p.h., under the conditions like those on the day in question, could be slackened in 600 feet to such an extent as to prolong the time of covering that distance 9 or 10 seconds. Deceased needed four seconds or less time to have cleared the crossing. From the facts proven, a jury could well find that the deceased was in discoverable, imminent peril from the time she began driving toward the tracks after she had closed the gate. The fireman knew or should have known of the presence of the tractor when it began its last movement toward the tracks; he knew the train was an extra and not to be expected. That a signal for the application of the brakes, even at the time the fireman admitted he discovered the tractor moving toward the tracks, would have avoided the collision is not an unreasonable conclusion. Obliviousness on the part of the deceased

was apparent. The noise of the tractor motor may well have prevented her from hearing the noise of the approaching train. We must rule that the evidence was ample to support the submission of the question of slackening speed. Cunningham v. Thompson, Mo., 277 S.W.2d 602, loc. cit. 608, 609(5).

There is no merit in the contention that instruction No. 1 was erroneous for the reason, as defendant contends, "two inconsistent theories were submitted." There is no inconsistency in failure to warn and failure to slacken speed. The two are in fact companions. Slackening of speed of various types of conveyances and warnings go hand in hand and are used daily in avoiding collisions. In this case, the evidence justified a finding that the speed of the train in question could have been slackened and at the same time warning signals could have been given in time to have avoided the collision. The case of Kick v. Franklin, 342 Mo. 715, 117 S.W.2d 284, was cited as authority by the defendant for its position. That case was reviewed by the court en banc in the case of State ex rel. Thompson v. Shain, 349 Mo. 27, 159 S.W.2d 582, loc. cit. 588, 589 (15–17). Note what this court en banc said of the Kick case: "In the Kick case the plaintiff stopped about twenty-five feet from the track and then started up and ran onto the track immediately in front of the oncoming train of the defendant. We analyzed mathematically the evidence as to the speed and the positions of the two vehicles, and we came to the conclusion that the very evidence relied upon to show that the defendant could have averted the accident by warning would disprove the ability of the defendant to avert the accident by slackening speed sufficiently to let the plaintiff beat the train at the crossing. The whole portion of the opinion discussing the instruction there given is devoted to demonstrating the inconsistency based on these peculiar evidentiary facts and therefore decides that there is no necessary inconsistency between the charges of failure to

warn and failure to slacken speed in cases in which such evidentiary facts are not shown."

It is our opinion that the court in the Kick case ruled that the evidence was insufficient to support a finding that the train could have been slackened sufficiently to have averted the collision. See 117 S.W.2d loc. cit. 288(2). At the conclusion of the discussion of this question, the court said [342 Mo. 715, 117 S.W.2d 288], "There is no substantial evidence, in this situation, that the speed of the train could have been so slackened as to permit the car to clear." In that case, as the statement of facts shows, members of the train crew testified that the bell of the locomotive was ringing and that the engineer, 117 S.W.2d loc. cit. 286, "when he saw the driver was not going to stop and saw the car coming onto the track, he slapped the air on all at once; * * *." That was done in an attempt to slacken speed and stop. It is, indeed, difficult to conceive a situation wherein slackening of speed and sounding a warning would be inconsistent.

■ Defendant says instruction No. 1 was erroneous because by it the court instructed the jury to find for plaintiff "even though Mrs. Moody failed to look and was negligent in getting into a position of danger, and omitted her failure to listen and to heed the warning of the railroad tracks." The case was submitted to a jury on humanitarian negligence and not on primary negligence. The instruction properly informed the jury that contributory negligence of the deceased in failing to look was not a defense in the case. The fact that the instruction did not mention failure to listen and to heed the warning of the presence of the tracks, if error, was favorable to the defendant. Kick v. Franklin, 345 Mo. 752, 137 S.W.2d 512, loc. cit. 515, 516(7, 8).

The judgment is affirmed.

All concur.